**Leland CUNDIFF, et ux.,**
**Plaintiffs–Appellants,**

v.

**Margaret CLINE, et al.,**
**Defendants–Respondents.**

No. 15228.

Missouri Court of Appeals,
Southern District,
Division One.

May 16, 1988.

Rehearing Denied June 7, 1988.

Robin E. Fulton, Maurice B. Graham, Schnapp, Graham, Reid & Fulton, Fredericktown, for plaintiffs-appellants.

Robert M. Ramshur, Ramshur & Goforth, P.C., Piedmont, for defendants-respondents.

**GREENE, Presiding Judge.**

Plaintiffs Leland Cundiff and his wife, Marjorie Cundiff, sued defendants Margaret Cline,[1] her daughter, Judy Crites, and

---

**1.** At time of trial, Mrs. Cline had remarried and her last name is now Margaret Wiethuchter.

Judy's husband, Junior Lee Crites. The suit alleged that the plaintiffs suffered damage because a farm in Wayne County, Missouri, which they had purchased from defendants did not contain the total acreage that had been represented to them by defendants' agent, real estate broker John Shilt. The case was court-tried, after which the trial court made findings of fact, conclusions of law, and entered judgment for defendants. We reverse and remand.

The facts of the case are virtually undisputed. In 1973, Leland Cundiff, after selling his Reynolds County, Missouri farm, contacted several realtors about purchasing another farm. One of the realtors contacted was John Shilt, a real estate broker, with an office in Piedmont, Missouri. Mrs. Cline had given Shilt an exclusive listing on the property in question here. When the exclusive listing period expired, Shilt continued to show the farm as an "open listing." Shilt told Cundiff that in addition to the improvements, the farm consisted of 480 acres, with approximately 100 acres in open pasture and row crop land, and the balance, approximately 380 acres, in timberland. At trial, Shilt testified that he had received the information regarding the amount of acreage from Mrs. Cline.

Cundiff and Shilt went to see the farm. In addition to viewing the improvements, consisting of three houses, a barn, an implement shed, and other outbuildings, Cundiff said, "I drove up and down the road to the end of the property and back up the road, and we—He pointed out property where the boundary lines was and the open land; and that was all." In regard to the open land, Cundiff said, "I got out and looked in one field. It was in beans; and I looked that field over, and that's as far as I went." Cundiff said that the men did not go into the timberland to examine it, while Shilt said, "Just a few hundred feet." Cundiff testified that he did not question the amount of acreage represented to him by Shilt, and also that at the closing, Mrs. Cline said there were 480 acres in the tract. Mrs. Cline, in her trial testimony, did not deny that she had made such representation to Cundiff.

Based on his observations during his brief visit to the farm, and the representations made by Shilt, Cundiff agreed to buy the farm. A document was prepared, which, in spite of its obvious defects, is referred to by the parties as a real estate sales contract. This document, dated August 11, 1973, recites that Leland Cundiff agreed to purchase from Mrs. Cline for the sum of $110,000 certain undescribed Wayne County real estate which, in actuality, was the farm in question. Cundiff made a $500 down payment at the time he signed the contract, and agreed to pay an additional $29,500 at the time of closing. The $80,000 balance was to be financed by Mrs. Cline, with the Cundiffs to execute a promissory note secured by a first deed of trust on the farm, made payable to Mrs. Cline, with interest at 7 percent per annum.

On September 20, 1973, the deal was closed. The farm consisted of several parcels of real estate which sellers had acquired at various times. Title to some of the land was in Mrs. Cline and her daughter, Judy, with the rest of it being owned individually by Mrs. Cline. Because of this, two warranty deeds were prepared and executed, one by Mrs. Cline, Judy Crites, and her husband, Junior Lee Crites, and the other by Mrs. Cline individually. Some of the tracts listed in the deeds contain legal descriptions specifying the amount of acreage, while others do not. The parties to this appeal agree that the total acreage allegedly conveyed cannot be readily determined by an examination of the deeds. Mr. and Mrs. Cundiff signed the $80,000 note and deed of trust, payable to Mrs. Cline in annual installments due on September 20 for the following 15 years, beginning 1974.

No survey had been made at the direction of Mrs. Cline to determine the amount of acreage in the farm. She testified that she had based her representation that the farm contained 480 acres on what other people (former owners) had told her. Cundiff did not have the land surveyed

However, for the sake of clarity, we have con-    tinued to use the name Cline in this opinion.

before he purchased it, but relied on the representations of Mrs. Cline and Shilt as to the number of acres the farm contained.

On October 19, 1973, Mrs. Cline assigned the note to her daughter, Judy Crites. Mr. and Mrs. Cundiff never moved to the farm, but he row cropped some of it. In 1982, the Cundiffs were unable to make the note payment when due. Foreclosure proceedings were instituted, and the unpaid balance on the note was declared to be immediately due and payable. After negotiations, a modification of the financing agreement was entered into between the Cundiffs and Mrs. Cline on January 27, 1983, whereby the interest rate on the note balance was increased to 14 percent and penalty provisions were agreed to in the event of future late payments.

Shortly thereafter, Cundiff decided to sell some of the timber on the farm to obtain money to pay on the note, and contacted a forester, Mike Anderson, to look at the timber and estimate its value. After walking over the timbered acreage, Anderson told Cundiff that he did not have the timberland that he thought he had. Cundiff then hired Dennis Barfield, a registered land surveyor, to survey the land and determine the exact acreage. Barfield found that, using the legal description in the deeds given the Cundiffs by Mrs. Cline and Mr. and Mrs. Crites, the farm contained 348.1 acres, rather than 480 acres, meaning there was a shortage of 131.9 acres, or a 27.5 percent shortage between what land was represented and what land was actually there.

In their appeal, the Cundiffs rely on eight grounds of claimed error, one of which is that the trial court erroneously declared and applied the law when it held in its judgment that there was a mutual mistake in fact in the representation of the amount of acreage contained in the farm, but that such misrepresentation was not material to the transaction. The actual language in the court's decree on this subject is as follows:

That the parties, in entering into the agreement to sell said real estate, made a mutual mistake of fact, to wit: that the conveyed real estate contained four hundred eighty (480) acres, when in truth and in fact, said conveyed real estate contains not more than three hundred forty-eight and 1/10 (348.1) acres.

. . . .

The Court further finds that the plaintiffs failed to establish by clear, cogent and convincing evidence that the mutual mistake as to the acreage in the tract was material to the transaction at the time the transaction was entered into.

. . . .

WHEREFORE, it is ORDERED, ADJUDGED and DECREED that plaintiffs failed to establish the necessary elements in support of their case by clear, cogent and convincing evidence, the burden being upon the plaintiffs to establish not only that there was a mutual mistake of fact, but that the mutual mistake of fact was material, and plaintiffs further failed to prove that the sale of the land was per acre rather than a gross sale of an entire tract.

We are of the opinion that these declarations and conclusions were error.

The only persons who made representations concerning the amount of acreage contained in the farm were Shilt and Mrs. Cline. Shilt, contrary to the trial court's finding on that issue, was Mrs. Cline's agent, as she had listed the property for sale with him, and had given him the information regarding the total acreage involved. At trial, Shilt testified that he had told Cundiff that the farm contained 480 acres, and that he had received such information from Mrs. Cline. Mrs. Cline admitted in her deposition, parts of which were read at trial, that she had given such information to Shilt, but alleged that she did so in an honest belief that the tract contained at least 480 acres, having been given that information by prior owners of the various tracts of land she had purchased and which land comprised the farm in question. In addition, the evidence is conclusive that the total acreage was discussed at the closing of the transaction. Cundiff testified that Mrs. Cline told him the farm contained 480 acres. Shilt said the matter was discussed

at closing, and Mrs. Cline did not deny it, saying that she could not remember.

In short, the evidence is undisputed that the real estate contract entered into by the parties was based on a mutual mistake of fact, which was that 480 acres was being conveyed to the Cundiffs by Mrs. Cline and Mr. and Mrs. Crites when, in fact, only 348.1 acres was being conveyed. The only real issue is whether such discrepancy was material.

A deficiency in the amount of farmland acreage conveyed which is in excess of 27 percent of that represented is clearly material. *Marler v. House,* 637 S.W.2d 365, 367 (Mo.App.1982).[2] In *Marler,* the representation by the owner was that the tract of land conveyed contained 33 acres when, in truth, as revealed by a subsequent survey, only 24 acres were conveyed. On the issue in question, the court held:

> Clearly, the discrepancy was material, in that, it involved more than one-fourth of the land. Defendant advertised the realty as 33 acres and did not advise the plaintiffs of the discrepancy, in spite of their inquiries. Plaintiffs did not learn of the misrepresentation until after closing and relied on the representations by paying $16,500 for 33 acres of land when, in fact, they received only 24 acres. Consequently, plaintiffs were damaged by defendant's representations; they did not receive what they had bargained and paid for.

The Cundiffs did not receive that for which they bargained and paid. Since they did not, it matters not whether the misrepresentations made by Shilt and Mrs. Cline were intentional or inadvertent, or that the sale was in gross, rather than being based on a per acre price. *See MacKinnon v. Weber,* 230 Mo.App. 785, 75 S.W.2d 638, 641 (1934).

The shortage of approximately 132 acres of timberland, was almost 35 percent of the amount of the timberland that the Cundiffs believed was contained in the farm. To say that such a deficiency is not material to one who intended to sell the timber cut from the farm to pay a large portion of the purchase price, has no basis in either fact or law. The amount of acreage conveyed went to the heart of the contract, and the trial court committed prejudicial error in declaring that the 131.8 acre deficiency was immaterial.

Since the case must be retried, we observe that the trial court's declarations and conclusions regarding the materiality issue was not the only error committed. While it is not necessary to discuss those errors in depth, as our holding on the materiality issue is sufficient to warrant a new trial, we feel obligated to point them out, so that the mistakes made by the trial court may not be repeated in the second trial.

There is a distinct possibility in this case that the trial court left the impression, by its questioning, cross-examination, and comments, that it was an advocate for Mrs. Cline, and was not neutral and impartial. While we do not wish to overburden this opinion by lengthy quotes illustrating such conduct, we remind that it is a trial court's duty to maintain an impartial attitude and a status of neutrality, and keep its questions and comments to a minimum. *Crimi v. Crimi,* 479 S.W.2d 195, 197 (Mo.App.1972). It is the trial court's duty not to do or say anything that might leave the impression it was not according all of the parties a fair and impartial hearing. *Duncan v. Pinkston,* 340 S.W.2d 753, 757 (Mo.1960); *Rutlader v. Rutlader,* 411 S.W.2d 826, 831 (Mo.App.1967).

We also have grave doubts, based on the record, as to whether the trial court's find-

---

**2.** Other Missouri cases where deficiencies in acreage due to misrepresentation have been held to be material are: *MacKinnon v. Weber,* 230 Mo.App. 785, 75 S.W.2d 638, 641 (1934) (deficiency of 7.6 acres on a tract represented to be 35 acres—22 percent); *Kite v. Pittman,* 278 S.W. 830, 831 (Mo.App.1926) (deficiency of 4.5 acres on a tract represented to be 18 acres—25 percent); *Messerli v. Bantrup,* 216 S.W. 825, 827 (Mo.App.1919) (deficiency of 28 acres on a 190 acre representation—14.7 percent); *Kelley v. Peeples,* 192 Mo.App. 435, 182 S.W. 809, 811 (1916) (deficiency of 53.31 acres on a tract alleged to contain 480 acres—11 percent); and, *Leicher v. Keeney,* 98 Mo.App. 394, 404, 72 S.W. 145, 148 (1903) (deficiency of 18 acres on a tract alleged to contain 160 acres—11 percent).

ings that Shilt was a dual agent for all parties, that the Cundiffs purchased the farm merely because of its "curb appeal" and for "row cropping" without regard for the amount of timberland, and that the Cundiffs had no right to rely on the representations of Shilt or Mrs. Cline regarding the amount of acreage had any support in fact or law. However, since the case must be retried, we refrain from reciting the facts and the law on each of these issues, with the hope that, if such issues are presented on retrial, adequate evidence is introduced to support each conclusion reached regarding them.

█ Additionally, proper attention should be paid to the correct measure of damages, in the event it is found that the Cundiffs are entitled to recover. Where, as here, the sale of land is deemed to have been made in gross, rather than per acre, and disparity between the represented and actual quantity of land is palpable and unreasonable, and the purchase money has been paid, the vendee may, if he chooses, seek equitable relief by way of an adjustment of the purchase price. *See Kite v. Pittman*, 278 S.W. 830, 831 (Mo.App.1926), 1 A.L.R.2d 9 (1948), and cases cited therein. *Also see* 94 A.L.R.3d 1091 (1979). In that connection, we observe that the land shortage involved timberland only, and not pasture or row crop land.

The findings of fact, conclusions of law, and judgment are reversed, and the cause is remanded to the trial court for further proceeding consistent with this opinion.

CROW, C.J., and HOLSTEIN, J., concur.