**In re Margaret Emiline WIETHUCHTER, Debtor.**

**Leland CUNDIFF and Marjorie Cundiff, Plaintiffs,**

v.

**Margaret Emiline WIETHUCHTER, Defendant.**

**Bankruptcy No. 89–01742–293. Adv. No. 89–0189.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Nov. 17, 1992.

Carl I. Katzen, St. Louis, Mo., for debtor.

Robin E. Fulton, Fredricktown, Mo., for plaintiffs.

A. Thomas DeWoskin, St. Louis, Mo., trustee.

James S. Cole, St. Louis, Mo., Asst. U.S. trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J), which the Court may hear and determine.

## PROCEDURAL BACKGROUND

Debtor filed a petition under Chapter 7 of the Bankruptcy Code on April 28, 1989. On July 31, 1989 the Cundiffs filed this adversary proceeding asserting that:

(1) Debtor committed fraud in misstating the acreage when selling her farm to them and that 11 U.S.C. § 523(a)(2)(A) precludes the discharge of Debtor's liability for this misconduct;

(2) Debtor failed to list all her assets on the schedules she filed with her petition of bankruptcy and lied about the existence of such assets and that this conduct provides a basis for denying Debtor a discharge under 11 U.S.C. §§ 727(a)(2), (3) and (4); and

(3) Debtor came into possession of property within 180 days of filing her petition which is property of the estate pursuant to 11 U.S.C. § 541.

## FACTUAL BACKGROUND

Upon consideration of the record and argument of counsel the Court finds:

1. In 1972, Debtor listed for sale the farm she and her former husband, Mr. Cline, had assembled through various purchases of land over approximately a thirty year period.[1]

2. Neither Mrs. Wiethuchter nor Mr. Cline ever had their property surveyed.

3. Debtor did not know how many acres composed her farm but believed she held 522 acres. Debtor based her opinion of the acreage on the various representations the sellers made when she and her deceased husband purchased the various tracts that comprise the farm and on deeds and documents recorded at the county court house. She was convinced she could rely on the sellers, whom she described as honest people.

4. Upon listing her property for sale, Debtor told Mr. Shilt, a real estate broker, that the farm contained 480 acres. Though Debtor thought the farm occupied 522 acres she told Mr. Shilt it only had 480 acres because she did not want to overstate the acreage. I found Mrs. Wiethuchter's testimony to be credible when she stated that she actually believed her farm contained 522 acres.

5. Mr. Cundiff contacted Mr. Shilt and inquired about buying a farm. Mr. Shilt showed Mr. Cundiff the Debtor's farm and, on the basis of Debtor's representations, told him it occupied 480 acres consisting of 100 acres of row crop and pasture land with the remaining 380 acres in timberland.

6. Mr. Cundiff bought the Debtor's farm for $110,000 paying $500 down, $29,500 cash at closing and $80,000 with a note to Debtor secured by a first deed of trust on the farm.

7. Shortly after the sale, Debtor assigned the note to her daughter.

8. In 1982, Mr. Cundiff missed a payment on the note. The terms of the note provided for the acceleration of principal due in the event of a missed payment. Foreclosure proceedings were brought against the property, presumably by Debtor's daughter.[2]

9. Mr. Cundiff negotiated an agreement with the Debtor's daughter under which she terminated her foreclosure on the property. Pursuant to the agreement, Mr. Cundiff cured his default and agreed to pay interest on the principal due under the note at twice the original rate of interest.[3]

---

1. Debtor and her former husband purchased four tracts of land between 1938 and 1965 when he died. Debtor added another tract to the farm in 1967.

2. The parties did not present evidence in this court on the matter of who instituted foreclosure proceedings against Mr. and Mrs. Cundiff. An opinion of the Missouri Court of Appeals simply states that "[f]oreclosure proceedings were instituted, and the unpaid balance on the note was declared to be immediately due and payable." *Cundiff v. Cline*, 752 S.W.2d 409, 411 (Mo.Ct.App.1988). This court assumes the Debtor's daughter was the party who foreclosed on the Cundiffs because the Debtor had assigned the Cundiff's note to her.

3. The record before the court does not specify the party with whom Mr. Cundiff negotiated. The Missouri Court of Appeals noted that "After negotiations, a modification of the financing agreement was entered into between the Cundiffs and [Debtor]." 752 S.W.2d at 411. Again,

10. Mr. Cundiff decided to harvest lumber from the farm in order to pay down the principal he owed Debtor's daughter and he contacted Mr. Anderson, a forester. Mr. Anderson walked around the Cundiff's farm and told Mr. Cundiff that there were not 380 acres of timberland as Mr. Cundiff had told him. Thereafter Mr. Cundiff had a survey of the property commissioned, which determined that the entire farm occupied only 348.1 acres.

11. Mr. Cundiff and his wife sued Debtor in state court for the acreage deficiency. Their complaint alleged both fraud and mutual mistake of fact. The trial court found a mutual mistake of fact but held that it was not material and refused to either grant the Cundiffs contract recision or award them the value of the "missing" acreage.

12. On appeal, the Missouri Court of Appeals, in an opinion dated May 16, 1988, held that the mutual mistake was clearly material and remanded the case.[4] The appellate court did not make a finding on the fraud issue.

13. Debtor filed her petition under Chapter 7 of the Bankruptcy Code on April 28, 1989.

14. The Debtor provided the following information in her Voluntary Chapter 7 Petition:

"STATEMENT OF FINANCIAL AFFAIRS FOR DEBTORS NOT ENGAGED IN BUSINESS

2. OCCUPATION AND INCOME
(a) Debtor's Occupation: retired

"Schedule B—2 Personal Property
a. Cash on hand: NONE
 200
b. Deposits of money with banking institutions, savings and loan associations, credit unions, public utilities, landlords, etc:

(c) Partnerships or business engaged in during the six years immediately preceding the filing of this Petition: NONE

(d) Income from trade or profession during the 2 calendar years immediately preceding the filing of this Petition: NONE

(e) Income from other sources: NONE"

In contrast, Mr. and Mrs. Wiethuchter's 1987 joint Missouri state income tax return reveals that the Debtor had an income of $7,160 and their 1988 return shows her having an income of $4,560. A CPA prepared these returns.

"3. TAX RETURNS AND REFUNDS

(b) Income or other tax refunds received by Debtor for the year immediately preceding the filings of this Petition: NONE

(c) Income or other tax refunds to which Debtor is or may be entitled: NONE"

The Debtor's 1988 joint tax returns show the State of Missouri owed her and her husband a $482 refund which they applied to their 1989 tax liability. The 1988 joint federal tax returns also demonstrates that the United States owed Debtor and her husband a $1,600 refund, of which $1,000 was applied to the their 1989 tax liability and $600 was refunded to Debtor and her husband. The Debtor testified that her husband handled the taxes and she simply signed the returns.

the court has assumed Mr. Cundiff dealt with the Debtor's daughter because the Debtor assigned the Cundiffs' note to her daughter.

4. The parties have stipulated that the Missouri Court of Appeals remanded the case for the sole purpose of calculating damages, and the appellate court's opinion states that "the evidence is undisputed that there was a mutual mistake of fact ... [and] ... [t]he only real issue is whether such discrepancy was material," *Cundiff v. Cline*, 752 S.W.2d 409 (Mo.App.1988). However, the court, in directing a remand listed a number of possible errors that the trial court had made and cautioned the trial court against repeating these errors in the retrial of the case on remand suggesting that the court was remanding the case for a trial on the merits and not only a determination of damages. *Id.* at 412–13.

Landmark Bank
5505 Telegraph Rd.
Checking 81016932 $200"

"SCHEDULE OF CURRENT INCOME AND CURRENT EXPENDITURES

C. CURRENT INCOME

| | | DEBTOR | SPOUSE |
|---|---|---|---|
| 1. | Monthly Gross Pay (wages, salary, or commissions) | 0.00 | 0.00 |
| 2. | Take home pay (gross pay less all deductions) | 0.00 | 0.00 |
| 3. | Regular income from a business or profession | 0.00 | 0.00 |
| 4. | Other income: | | |
| | Interest and dividends | 0.00 | 0.00 |
| | From real estate or personal property | 0.00 | 0.00 |
| | Social Security | 550.00 | 580.00 |
| | Pension or other retirement income | 0.00 | 0.00 |
| 5. | Alimony, maintenance or support payments: Payable to the debtor for the debtor's use | 0.00 | 0.00 |

Payable to the debtor for the support of another:
 NONE

| | DEBTOR | SPOUSE |
|---|---|---|
| Total estimated current monthly income | 550.00 | 580.00 |

If you anticipate receiving additional income on other than a monthly basis in the next six months, such as an income tax refund, describe:
NONE"

---

15. A review of Mrs. Wiethuchter's schedules indicates that she acknowledged having an interest in only one bank account in the amount of $200.00. She listed this account as a checking account with Landmark Bank, account number 81016932. She actually had interests in several bank accounts.

When Debtor filed her petition on April 28, 1989, she had an interest in a checking or savings account (ACCOUNT NO. 06–74005485) at Missouri Savings Association, which was held in the name of "Edward Wiethuchter or Margaret E. Wiethuchter" and contained a balance of $13,939.28. In her testimony she denied any knowledge of this account and explained that her husband handled all of their business and if her name was on the account she was unaware of it. This account was opened on April 17, 1989 with a deposit of $14,522.20. In her testimony the Debtor admitted that on July 5, 1989 she withdrew the sum of $10,000.00 from a CD, but denied it was from this account. She claimed that her husband had set up the $10,000.00 account to prevent his sons from getting his money. In fact, she actually withdrew $10,000.00 from the Missouri Savings Association Account Number 06–74005485, leaving a balance of $3,872.16.

From the $10,000.00 withdrawal she gave her sister between $4,000.00 to $5,000.00 to repay a car loan her sister had made to her two years earlier. On November 7, 1989, the Debtor deposited a check drawn on the Missouri Savings Association to a checking account titled "Edward C. Wiethuchter Jr. or Margaret Wiethuchter" at Landmark Bank (Account Number 0720016424) in an amount of $4,392.12 [5] and on November 16, 1989 she placed the remaining proceeds of $4,907.71 in a Missouri Savings Association Savings Certificate Account Number

5. The Landmark Bank checking account number 0720016424 existed at the time the debtor filed her bankruptcy petition, with a balance of $189.12. The Debtor had also opened two other accounts at Landmark Bank in her name only. Account Number 0721019016 was opened on December 2, 1989 with an initial deposit of $2,203.43. This account was closed on February 20, 1990 and on the same day account number 0721019622 was opened with an initial deposit of $1,103.60.

0610002263 in the name of "Margaret E. Wiethuchter TR for Edward Wiethuchter." From December 13, 1989 until June 8, 1990 she withdrew various sums from the Certificate Account totaling $4,735.00 and used those funds to pay various living expenses including: gas charges, electric bills, medical costs, car expenses and hospital insurance. Debtor failed to disclose either the existence of the debt to her sister or the Debtor's interest in either of the Missouri Savings Association accounts in the schedules she filed with her petition.

16. Debtor also held and neglected to list on her schedules filed with her petition, an interest in a bank account at Lemay Bank and Trust Company, titled "Edward C. Wiethuchter or Margaret E. Wiethuchter, either or survivor." This account had a balance of $599.36 on July 27, 1989.

DISCUSSION

*Plaintiffs' 523(a)(2)(A) Claim*

 Section 523(a)(2)(A) of the Bankruptcy Code denies a debtor a discharge from any debt "(2) for money, property, services ... to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;" 11 U.S.C. § 523(a)(2)(A) (1988). Plaintiffs, in Count I, argue section 523(a)(2)(A) bars the discharge of the Debtor's liability to them stemming from their purchase of her farm. Debtor responds that the Missouri Court of Appeals found a mutual mistake of fact, not fraud and that because Debtor did not actually intend to defraud the Cundiffs, section 523(a)(2)(A) does not bar the discharge of her liability to them.

Courts have split on how culpable a debtor's conduct must be for section 523(a)(2)(A) to bar the discharge of a debt obtained by a false representation. Some courts hold that this section bars the discharge of a debtor's liabilities arising from false representations made by a debtor in reckless disregard of the truth of the representation. *See, Martin v. Sylvester (In re Martin),* 130 B.R. 930 (Bankr.N.D.Ill.1991); *Krenowsky v. Haining (In re Haining),* 119 B.R. 460 (Bankr.D.Del.1990); *First*

*Seneca Bank v. Galizia (In re Galizia),* 108 B.R. 63 (Bankr.W.D.Pa.1989). However, the majority of courts that have considered the issue hold that section 523(a)(2)(A) only prohibits the discharge of debts incurred from the debtor's false representations made by the debtor while acting with an intent to deceive or defraud the objecting creditor. *See, Smith v. Meyers (In re Schwartz),* 130 B.R. 416 (Bankr.S.D.N.Y. 1991); *New York City Housing Auth. v. Gadsden,* 128 B.R. 45 (Bankr.E.D.N.Y. 1991); *Chevy Chase Federal Savings Bank v. Graham,* 122 B.R. 447 (Bankr. M.D.Fla.1990).

The Eighth Circuit has not ruled on whether section 523(a)(2)(A) bars the discharge of a debt based on a false representation made by the debtor in reckless disregard of the truth. The Eighth Circuit, however, examined section 523(a)(2)(A) in *Thul v. Ophaug (In re Ophaug),* 827 F.2d 340 (8th Cir.1987), where the issue confronting the court was whether a creditor who sought to prevent discharge of his debt under 523(a)(2)(A) needed to show that his reliance on the debtor's false statement was reasonable. *Id.* In dicta, the *Ophaug* court stated that section 523(a)(2)(A) only denies the discharge of debts the debtor incurs through actual fraud and not those a debtor incurs through fraud implied in law. *In re Ophaug,* 827 F.2d 340, 342 n. 1 (8th Cir.1987). Given the Eighth Circuit's discussion in *Ophaug,* this court, like the majority of courts cited above, holds that for section 523(a)(2)(A) to bar the discharge of a debt incurred for a false representation, debtor must have intended to deceive or defraud the complaining creditor when the debtor made the false representation. In the instant case, I have found that the Debtor did not intend to defraud or deceive the Cundiffs when she told Mr. Shilt that her farm contained 480 acres, since she actually thought she was selling 522 acres. Accordingly, I find for the Defendant as to Count I.

*Plaintiffs' Section 727 Claims*

 The Plaintiffs, in Count II, assert that this court should deny the debtor her discharge pursuant to section 727(a)(4)(A),

because of the various misrepresentations Debtor made on her schedules. Section 727(a)(4) of the Bankruptcy Code provides that "the court shall grant the debtor a discharge, unless—the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (1988). I agree with the Plaintiffs that Debtor should be DENIED HER DISCHARGE, pursuant to 11 U.S.C. § 727(a)(4)(A) for having made false oaths by presenting various misrepresentations in her schedules.[6] Mrs. Wiethuchter's schedules contained several material misrepresentations of her financial affairs. It is the Debtor's duty to file schedules, concerning her financial affairs and transactions, in an accurate, candid and truthful manner so as to provide the trustee and creditors with a full disclosure. In *Mertz v. Rott*, 955 F.2d 596 (8th Cir.1992), the Eighth Circuit recently held that the Debtor's failure to disclose, in his schedules, that he anticipated and subsequently received a New York state tax refund, was a false oath and a material misrepresentation justifying the denial of his discharge, even though the refund was allegedly exempt. The Eighth Circuit, applying the materiality standard it adopted in *In re Olson*, 916 F.2d 481 (8th Cir.1990), found that the tax refunds Mertz repeatedly failed to list on his schedules were material. 955 F.2d at 598. The Circuit Court reasoned that the refunds "bore a relationship to the bankrupt's ... estate ... [and concerned] ... the existence ... of his property" and so were material despite the fact that the value of the refund was only 1.5% of Mr. Mertz's total liabilities. *Id.* Where material assets are intentionally not disclosed in the debtor's schedules and amended schedules, a court should apply § 727(a)(4)(A) and deny the debtor his/her discharge. *Id.* Thus, the Court found

that, "The tax refund was an asset of his estate that Mertz was required to disclose to his creditors. The amount involved—$1358—was not insubstantial." *In re Mertz*, 955 F.2d 596 (8th Cir.1992).

The *Mertz* case governs our decision in the case at bar. Mrs. Wiethuchter, like Mr. Mertz, failed to disclose the existence of the tax refunds she and her husband ultimately received. True, Mrs. Wiethuchter's situation differs from Mr. Mertz's in that he amended his schedules and failed to include his tax refunds in his amended schedules, while Mrs. Wiethuchter did not amend her schedules. However, all debtors have a duty to update the schedules they file with the Bankruptcy Court and when considered with her other omissions, her failure to list the tax refunds take on a greater significance and consequence.

In addition to Mrs. Wiethuchter's neglect to list her state and federal tax returns on her initial schedules or amend her filings to reflect their existence, she also failed to disclose her interests in the $10,000 she withdrew from the Missouri Savings Association[7], the $599.36 bank account at Lemay Bank and Trust Company and her 1987 and 1988 income. She testified that she did not have any income from other sources when in fact her Missouri income tax returns show an income of $7,160 in 1987 and $4,560 in 1988. Although Mrs. Wiethuchter continued to deny she had any income, other than social security and perhaps a little interest, she failed to provide a satisfactory explanation why her and her husband's jointly-filed Missouri income tax returns revealed that she did have income. It should be noted that during her deposition, with her husband present, she was asked in reference to her 1987 Missouri income tax return:

---

**6.** In light of this court's decision to deny Mrs. Wiethuchter a discharge under Section 727(a)(4) of the Bankruptcy Code, we find it unnecessary to discuss the merits of the Plaintiffs' claims under §§ 727(a)(2) and (3) and, therefore, make no ruling on those portions of Plaintiffs' case.

**7.** The record is unclear as to whether the debtor and her husband held the various checking,

money market and CD accounts as tenants in the entirety. However it is immaterial whether she held title solely or as a tenant in the entirety since in either case her interest in the property must be revealed in her schedules. *In re Garner*, 952 F.2d 232 (8th Cir.1991). The debtor neither listed these various accounts in her schedules, nor did she seek to exempt them.

"Q. You have listed there, income of seven thousand, one hundred and sixty dollars.... Do you know where that income came from?

A. No, I don't.

Q. Do you have any records with you that would indicate where that income came from?

A. That was '87?

Q. That's correct.

A. The only income I ever—that I had outside of social security was dividends that I, when I got—for the, for the payments of the farm. That's the only dividends I ever got.

Q. All right. So the only dividend you ever—Strike that. The only dividend income you ever received is from Mr. Cundiff; is that what you're saying?

A. That I deposited in Missouri Savings, and that's the only income that I had, outside of my social security.

Q. All right.

A. I never had no income."

The Debtor's deposition was taken four months prior to the trial, which gave her and her attorney ample time to review her financial records to determine whether the Missouri income tax returns for 1987 and 1988 were accurate. However, during the trial the debtor simply continued to deny that she had income and failed to provide any explanation why the joint returns reflected that she had income. In light of the Eighth Circuit's decision in *In re Mertz*, 955 F.2d 596 (8th Cir.1992) these omissions and subsequent failures to amend, require this court to deny Mrs. Wiethuchter's discharge under § 727(a)(4)(A).[8]

---

**8.** The Plaintiffs' prayer for relief asks this court to deny Debtor her discharge and "order that the debt owing to Plaintiffs in the amount of $60,000.00 be and hereby is held to be a nondischargeable debt." While this court has decided to deny Debtor her discharge, it cannot determine the amount of the debt owed to the Plaintiffs. Shortly before Debtor filed her petition in bankruptcy, the Missouri Court of Appeals remanded the Plaintiffs' cause of action against Mrs. Wiethuchter to the trial court for a determination of the damages owed to the Cundiffs. This court does not have the evidence before it to properly value the Cundiffs' judgment against Debtor and is of the opinion that Plaintiffs must seek such a determination in state court.