**In re Kevin and Michelle COLVIN, Debtors.**

No. 02–48403–R.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Jan. 24, 2003.

Karen E. Evangelista, Troy, MI, for debtor.

*Opinion Granting Trustee's Motion for Turnover*

STEVEN W. RHODES, Chief Judge.

The trustee has filed a motion for turnover of a $10,000 tax refund that the debtors failed to disclose until the trustee examined them following the meeting of creditors. The debtors object and seek to exempt a portion of the refund. The Court conducted a hearing on October 15,

2002, and took the matter under advisement. The Court now concludes that the debtors improperly concealed the tax refund and that therefore the trustee's motion should be granted and the debtors' exemption should be denied.

## I.

On April 9, 2002, Kevin and Michelle Colvin filed a petition for chapter 7 relief. On May 22, 2002, the meeting of creditors was held. On July 2, 2002, the trustee conducted an examination of the debtors under Federal Rule of Bankruptcy Procedure 2004. During this examination, the debtors disclosed for the first time that after they filed their bankruptcy petition, they had received a tax refund for the 2001 tax year in the amount of $10,000.

The trustee seeks turnover of the full amount of the tax refund and objects to any attempt by the debtors to amend their schedules to add the asset and claim an exemption. The trustee contends that the debtors' failure to disclose the asset was an attempt tc conceal the asset.

The debtors contend that their failure to disclose the tax refund was an oversight. The debtors seek to amend their schedules to add the asset and claim the available exemption under § 522(d)(5) in the amount of $7,250. The debtors have agreed to remit the remaining $2,750 to the trustee.

## II.

■ Section 521(1) of the Bankruptcy Code requires the debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs[.]" In addition, the code and the rules create a special obligation on the debtor in disclosing assets. Section 521(3) obligates the debtor to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties[.]" Under Rule 2015(a)(1), the trustee's duties include filing a complete inventory of the debtor's property, if that has not already been done. Further, Rule 4002(4) specifically requires the debtor to "cooperate with the trustee in the preparation of an inventory[.]" Fed. R. Bankr.P. 4002(4). *See also In re Moses,* 792 F.Supp. 529, 531 (E.D.Mich.1992); *Kaler v. Olmstead (In re Olmstead),* 220 B.R. 986, 998 (Bankr. D.N.D.1998); *In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Cal.1992), *aff'd,* 153 B.R. 601 (9th Cir. BAP 1993), *aff'd without op.,* 24 F.3d 247 (9th Cir.1994) (unpublished table decision).

■ The Sixth Circuit recently stated, "A debtor has an affirmative duty to disclose all of its assets to the bankruptcy court[.]" *Browning v. Levy,* 283 F.3d 761, 775 (6th Cir.2002). *See also, Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 781 (9th Cir.2001); *Cusano v. Klein,* 264 F.3d 936, 945–46 (9th Cir.2001); *Browning Manuf. v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 207–08 (5th Cir.1999); *Mertz v. Rott,* 955 F.2d 596 (8th Cir.1992) (Failure to disclose tax refund of $1358 justified denial of discharge.)

Other judicial pronouncements regarding the debtor's obligation of disclosure in bankruptcy are equally firm. "A debtor's complete disclosure is essential to the proper administration of the bankruptcy estate." *Cohen v. McElroy (In re McElroy),* 229 B.R. 483, 488 (Bankr.M.D.Fla. 1998). *See also In re Sochia,* 231 B.R. 158, 160 (Bankr.W.D.N.Y.1999).

"The veracity of the [debtor's] statements is essential to the successful administration of the Bankruptcy Code." *Van Roy v. Watkins (In re Watkins),* 84 B.R. 246, 250 (Bankr.S.D.Fla.1988) (citing *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir.1984)).

"The obligation of full disclosure is crucial to the integrity of the bankruptcy process." *In re Hyde,* 222 B.R. 214, 218 (Bankr.S.D.N.Y.1998), *rev'd on other grounds,* 235 B.R. 539 (S.D.N.Y.1999) (citing *In re Wincek,* 202 B.R. 161, 166 (Bankr.M.D.Fla.1996)), *aff'd,* 208 B.R. 238 (M.D.Fla.1996) ("[F]ull disclosure of all relevant information has always been an important policy of the bankruptcy laws." (internal quotations and citations omitted) (alteration in original)).

■ "The debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately." *In re Famisaran,* 224 B.R. 886, 891 (Bankr.N.D.Ill. 1998). *See also Cole Taylor Bank v. Yonkers (In re Yonkers),* 219 B.R. 227, 230 (Bankr.N.D.Ill.1997); *National Am. Ins. Co. v. Guajardo (In re Guajardo),* 215 B.R. 739, 741 (Bankr.W.D.Ark.1997); *United States v. Trembath (In re Trembath),* 205 B.R. 909, 914 (Bankr.N.D.Ill.1997); *Netherton v. Baker (In re Baker),* 205 B.R. 125, 130 (Bankr.N.D.Ill.1997), *motion to amend judgment denied,* 206 B.R. 510 (Bankr. N.D.Ill.1997); *In re Robinson,* 198 B.R. 1017, 1022 n. 6 (Bankr.N.D.Ga.1996); *Torgenrud v. Benson (In re Wolcott),* 194 B.R. 477, 486 (Bankr.D.Mont.1996); *Hollar v. United States (In re Hollar),* 184 B.R. 25, 29 (Bankr.M.D.N.C.1995), *aff'd,* 188 B.R. 539 (M.D.N.C.1995), *aff'd,* 92 F.3d 1179 (4th Cir.1996) (unpublished table decision); *Cundiff v. Wiethuchter (In re Wiethuchter),* 147 B.R. 193, 199 (Bankr.E.D.Mo. 1992); *Jones v. United States (In re Jones),* 134 B.R. 274, 279 (N.D.Ill.1991); *Banc One, Texas, N.A. v. Braymer (In re Braymer),* 126 B.R. 499, 502 (Bankr. N.D.Tex.1991).

"The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *Casey v. Kasal (In re Kasal),* 217 B.R. 727, 734 (Bankr.E.D.Pa.1998), *aff'd,* 223 B.R. 879 (E.D.Pa.1998). *See also FDIC v. Sullivan (In re Sullivan),* 204 B.R. 919, 942 (Bankr.N.D.Tex.1997); *Morton v. Dreyer (In re Dreyer),* 127 B.R. 587, 593–94 (Bankr.N.D.Tex.1991); *MacLeod v. Arcuri (In re Arcuri),* 116 B.R. 873, 879–80 (Bankr.S.D.N.Y.1990) ("A debtor has an 'affirmative duty' to identify all assets, liabilities, and to answer all questions fully and with the utmost candor. Creditors and those charged with administration of the bankruptcy estate are entitled to a 'truthful' statement of the debtor's financial condition." (citations omitted)); *Friedman v. Sofro (In re Sofro),* 110 B.R. 989, 991 (Bankr.S.D.Fla.1990); *Stathopoulos v. Bostrom (In re Bostrom),* 286 B.R. 352 (Bankr.N.D.Ill.2002).

"The burden is on the debtors to complete their schedules accurately." *Rion v. Spivey (In re Springer),* 127 B.R. 702, 707 (Bankr.M.D.Fla.1991). *See also Faden v. Ins. Co. of North Am. (In re Faden),* 96 F.3d 792, 795 (5th Cir.1996).

■ "Candor, accuracy and integrity are required of a debtor in bankruptcy." *Holder v. Bennett (In re Bennett),* 126 B.R. 869, 875 (Bankr.N.D.Tex.1991).

"The bankruptcy laws impose a strict obligation on debtors to file complete and accurate schedules." *In re Dubberke,* 119 B.R. 677, 680 (Bankr.S.D.Iowa 1990).

The connection between the debtor's obligation to file complete and accurate schedules and the fair administration of the bankruptcy case is clear. *See North River Ins. Co. v. Baskowitz (In re Baskowitz),* 194 B.R. 839, 843 (Bankr.E.D.Mo. 1996) ("The dual purposes of a Chapter 7 bankruptcy case are to grant the honest debtor a discharge of his or her prepetition debts, and to provide a mechanism for the

fair and orderly distribution of the debtor's assets that are subject to administration by the Trustee. These purposes are [only] realized when a debtor complies with the requirement that he or she submit accurate and complete information concerning identification of creditors and assets."). This administration includes "determining whether crimes have been committed, whether objections to exemptions should be filed, and whether property should be claimed for the estate or abandoned." *In re Gaines*, 106 B.R. 1008, 1013 (Bankr. W.D.Mo.1989), *rev'd on other grounds*, 121 B.R. 1015 (W.D.Mo.1990). *See also Payne v. Wood*, 775 F.2d 202, 206 (7th Cir.1985) ("The requirement that the debtor list the property serves at least two functions. One is to settle claims of title, so that on the day of discharge everyone knows who owns what. The other is to allow the trustee to decide which claims to challenge."); *Andermahr v. Barrus (In re Andermahr)*, 30 B.R. 532, 533 (9th Cir. BAP 1983); *First Nat'l Bank of Mason City, Iowa v. Cook (In re Cook)*, 40 B.R. 903, 906 (Bankr.N.D.Iowa 1984).

■ To a substantial extent, the trustee's ability to perform the duties set forth in 11 U.S.C. § 704 depends on the accuracy and completeness of the debtor's disclosures. Under 11 U.S.C. § 554(c), only scheduled property (not otherwise administered) is deemed abandoned to the debtor when the case is closed. *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir.1995). *See also Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991). In addition, the debtor's financial rehabilitation can be advanced by preparing and filing complete and accurate papers. BANKRUPTCY: THE NEXT TWENTY YEARS, NATIONAL BANKRUPTCY REVIEW COMMISSION FINAL REPORT, at page 108 (October 20, 1997).

■ Accordingly, the disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge.

### III.

■ Pursuant to FED.R.BANKR.P. 1009(a), a debtor may amend a voluntary petition as a matter of course any time before the case is closed. *Lucius v. McLemore*, 741 F.2d 125, 126 (6th Cir.1984). However, the court may disallow amendments based on a finding of bad faith or when property has been concealed. *Lucius*, 741 F.2d at 127; *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885 (8th Cir.2002); *Payne*, 775 F.2d at 205; *In re Montanez*, 233 B.R. 791, 796 (Bankr.E.D.Mich.1999); *In re Barber*, 223 B.R. 830, 833 (Bankr. N.D.Ga.1998); *In re Stinson*, 221 B.R. 726, 728 (Bankr.E.D.Mich.1998); *In re Lundy*, 216 B.R. 609, 610 (Bankr.E.D.Mich.1998); *Lini, Inc. v. Schachter (In re Schachter)*, 214 B.R. 767, 778 (Bankr.E.D.Pa.1997); *In re St. Angelo*, 189 B.R. 24, 26 (Bankr. D.R.I.1995); *In re Markmueller*, 165 B.R. 897, 900 (Bankr.E.D.Mo.1994), *order corrected*, 167 B.R. 899 (Bankr.E.D.Mo.1994), *aff'd*, 51 F.3d 775 (8th Cir.1995); *Mohring*, 142 B.R. 389; *B.K. Medical Sys., Inc. Pension Plan v. Roberts (In re Roberts)*, 81 B.R. 354, 360 (Bankr.W.D.Pa.1987); *In re Wenande*, 107 B.R. 770 (Bankr.D.Wyo. 1989).

■ In the context of an amendment of exemptions, bad faith is determined by an examination of the totality of the circumstances. *Kaelin*, 308 F.3d 885. Mere allegations of bad faith will not suffice; the objecting party must demonstrate the bad faith of the debtor by specific evidence. *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 255 (9th Cir. BAP 1988); *Brown v. Sachs (In re*

*Brown*), 56 B.R. 954, 958 (Bankr.E.D.Mich. 1986).

## IV.

■ Kevin Colvin testified at the hearing that he and his wife received the tax refund in May or June, 2002, and that they used the money to pay their property taxes and other bills. He further testified that he does not remember his attorney specifically asking him about any tax refunds, and, if she had, they would have told her about the anticipated refund because they did not have anything to hide. Thus, it is the debtors' position that their failure to disclose the tax refund was inadvertent and they should be permitted to exempt it now.

Based on the totality of the circumstances, the Court must find that the debtors' failure to disclose this asset was not inadvertent as they claim, but rather constituted an intentional concealment. The following facts fully justify this finding:

First, the record establishes that when the debtors filed their bankruptcy papers, they knew about their right to a large tax refund. As noted, the bankruptcy petition was filed on April 9, 2002. Although the record does not specifically disclose when the debtors filed their return, it appears that they filed their 2001 tax return just shortly before they filed their bankruptcy petition, as they received the refund one to two months after they filed their petition. Nevertheless, in response to the line requiring disclosure of tax refunds, the debtors stated, "None."

Second, in signing their bankruptcy papers, the debtors affirmed under penalty of perjury that they had read the papers and that the information disclosed in them was accurate. However, it was not.

Third, the debtors could have harbored no doubt about their obligation to disclose this asset. Schedule B, Personal Property, Line 17, explicitly requires the disclosure of tax refunds.

Fourth, at the meeting of creditors, the debtors were again under oath and failed to disclose their right to this tax refund.

Fifth, the debtors' refund, $10,000 is quite large, and thus not readily forgotten, especially in the face of sufficient debt to consider filing bankruptcy.

Sixth, and perhaps most significantly, this asset was the debtors' only non-exempt asset. It is highly suspicious that their only non-exempt asset was the only asset they failed to disclose.

Seventh, the asset was their only asset so easily dissipated, and indeed the debtors fully dissipated the cash before the trustee's discovery of it.

Considering the totality of the circumstances, the Court cannot conclude that the debtors' failure to disclose their tax refund in a timely manner was an innocent oversight, as the debtors assert. The Court finds that Mr. Colvin's self-serving testimony to that effect is simply not credible. Rather, the Court finds that the debtors' failure to disclose this asset resulted from a cavalier and reckless intention regarding their disclosure obligations that simply cannot be condoned. *Lundy*, 216 B.R. 609.

The debtors claim that their attorney failed to ask them about tax refunds when preparing the schedules and that this should excuse their failure to disclose the asset.. The Court must reject this assertion for two reasons. First, the Court is well aware from its several years of experience with debtors' counsel that she is a highly competent bankruptcy attorney and has an outstanding reputation for the quality of her work. Accordingly, the Court considers the debtors' factual assertion highly unlikely.

Second, and perhaps even more important, from a legal perspective, reliance on the advice of counsel can save a debtor from the consequences of failing to disclose assets only when that reliance is reasonable and in good faith. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986); *Sullivan*, 204 B.R. at 943; *Dreyer*, 127 B.R. at 597; *American Savings & Loan Ass'n v. Weber (In re Weber)*, 99 B.R. 1001, 1018 (Bankr. D.Utah 1989). In this case, even if the debtors' attorney did not ask them about tax refunds, it was plainly not reasonable for the debtors to rely on that failure. As noted, Schedule B, Line 17, explicitly requires the debtors to disclose tax refunds. These debtors stated under penalty of perjury that they had no tax refunds, and that they had read the schedules and that they were true. "The defense of reliance on counsel is not available when it is transparently plain that the advice is improper." *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992). The schedules made it "transparently plain" to the debtors that they were required to disclose tax refunds even if their attorney did not inform them of that specific disclosure obligation.

Inadvertence, neglect and carelessness is somewhat common in the preparation of initial bankruptcy papers, perhaps too common. Hon. Steven W. Rhodes, *An Empirical Study of Consumer Bankruptcy Papers*, 73 AM. BANKR. L.J. 653 (Summer 1999) (examining a random sample of 200 consumer bankruptcy filings and finding an average of about 3 errors per case on seventeen to twenty points of information tested.) There is a tendency to conclude that just because inadvertence is somewhat common in the preparation of bankruptcy papers, inadvertence must be the cause in a particular case. But that tendency must be rejected in favor of a careful examination into the circumstances of each case.

Here the Court has found that the debtors' failure to disclose their tax refund was intentional or at least reckless. The question then becomes how to remedy that conduct appropriately in this case and how to deter such conduct in the future that would, if undeterred, evade the law and cheat creditors. The Sixth Circuit has stated, "When a court metes out a sanction, it must exercise such power with restraint and discretion.... The sanction levied must thus be commensurate with the egregiousness of the conduct." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)* 103 F.3d 472, 477 (6th Cir.1996) (citation omitted).

In this case, it is commensurate with the debtors' conduct in failing to disclose their $10,000 tax refund to deny to them their claim of exemption in that refund. As the Seventh Circuit observed, "If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive... When it is hard to detect an effort to evade the law, the penalty must exceed the profits of the evasion." *Payne*, 775F.2d at 205. Debtors cannot be permitted to exempt property by self-help. Court approval is required and debtors are prohibited from any action that circumvents that process. As one court stated, "Property is not exempt by fiat of the debtor, but only through a process of compliance with the statutory disclosures and then by order of the bankruptcy court[.]" *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 230 (E.D.N.Y.2000).

Accordingly, the trustee's motion for turnover is granted and the debtors' claim

of exemption is denied. An appropriate order will be entered.