E. M. KELLEY, Respondent v. L. N. PEEPLES, et al., Appellants.

**Kansas City Court of Appeals, January 17, 1915.**

1. FRAUD AND DECEIT: Damages: Sale of Lands. Where one relies upon the representations of the owners of land and their agents that the land he purchased contained 480 acres at $29.16 2-3 per acre, amounting to $14,000, and four years later a survey disclosed that there were only 426.69 or 53.31 acres less than represented, the purchaser is entitled to recover damages to the amount of the shortage.

2. ———: ———: Brokers and Agents. A real estate broker is bound to respond in damages for false and fraudulent representations regarding the acreage of land, unless it should be held that the purchaser's neglect to observe ordinary care and prudence for his own protection was the proximate cause of the loss.

3. ———: ———: Knowledge of Examiner of Abstract. The knowledge of an examiner of an abstract derived from the abstract relating to a subject foreign to his employment, which as stated was to examine the title to certain described lands and not to ascertain their quantity cannot be imputed to his principal.

4. INSTRUCTIONS: Damages: Measure. An instruction on the measure of damages which states that "to find for plaintiff in such sum as you may believe from the evidence he has been damaged" was a mere non-direction on the measure of damages.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*J. M. Davis & Son* and *Arthaud & Arthaud* for appellants.

*Scott J. Miller* for respondent.

JOHNSON, J.—This is an action to recover damages for fraud and deceit in the sale to plaintiff on

January 27, 1906, of three quarter-sections of land
in Livingston county. The defendants L. N. Peeples,
Lula Peeples and A. L. Anderson, were the owners of
the record title and the defendants Faltinson, Dear-
dorff and McCaskey were real estate agents in Chilli-
cothe who had the land listed for sale and conducted
all the negotiations that culminated in its conveyance
to plaintiff by warranty deed executed by the owners
of the record title. There is evidence tending to show
that the three defendants who conducted the transac-
tions with plaintiff were acting for themselves, hav-
ing secured an option on the property, but from all
the facts and circumstances in evidence, the inference
is strong that their actual relationship to the owners
of the record title was that of real estate agents or
brokers. The cause of action alleged in the petition
is grounded upon false and fraudulent representations
concerning the acreage of the land made by the brok-
ers, and relied upon by plaintiff, who did not discover
their falsity until four years later when he sold the
land and the true acreage was disclosed by a survey
the purchaser caused to be made. Plaintiff alleged,
and adduced evidence tending to show, that he pur-
chased the land which was represented as containing
480 acres—the area of three full quarter-sections—
at $29.16 2/3 per acre, amounting in all to $14,000,
while in fact, as the survey disclosed, the total acre-
age was 426.69, or 53.31 acres less than represented.
The defendants allege in their answer that the farm
was sold in gross for $14,000 and not by the acre; that
no representations were made concerning quantity
and that, if misled, plaintiff, who personally inspected
the land during the negotiations and was furnished an
abstract of title which stated the area, was the victim
of his own negligence. A trial of the issues raised by
the pleadings resulted in a verdict and judgment for
plaintiff against all of the defendants for $1,200 and

following the overruling of their motions for a new trial and in arrest of judgment, defendants appealed.

Plaintiff lived in Iowa and was the owner of a farm of 160 acres in that State which he valued at $75 per acre and also of a farm of 160 acres in Kansas valued at $2000. In the Fall of 1905 he sent a real estate agent of Clarinda, Iowa, to Livingston county with a view to procuring a suitable exchange of his farms for Missouri land. This agent fell in with defendant brokers who showed him lands they had for sale or exchange, including the tract in question which plaintiff's agent testified they represented as containing 480 acres and priced to him at $30 per acre. After receiving his agent's report, plaintiff went to Chillicothe and, accompanied by one of the defendant brokers, visited the tract and made as thorough an investigation as possible under the circumstances. He could not accurately estimate the area and in answer to his inquiries was told the whole tract contained 480 acres and that the price was $30 per acre. Negotiations ensued which continued several months and finally culminated in an exchange of propertes, but not until defendants reduced the price of their land $400, and plaintiff the price of his two farms $500. Before the exchange was made defendants sent an abstract of title to plaintiff which disclosed that the three quarter-sections were not full quarters and recited facts from which it inaccurately appeared that their gross area was only 407 acres. Without attempting to examine it, plaintiff handed the abstract to an examiner of titles in Clarinda who advised that it be sent to an examiner in Chillicothe as he did not deem himself competent to pass on titles in Missouri. Plaintiff consented and the abstract was forwarded to an examiner of titles in Chillicothe who, in the letters he subsequently wrote to the Clarinda examiner and to the plaintiff about the title, made no reference to

the quantity of the land and he evidently understood that his employment was confined to an examination of the title "to the east ¾ of section 33, township 57, range 22, Livingston county, as shown by 'the abstract," and did not include the duty of ascertaining the quantity of land embraced by that description. During the four years plaintiff owned and was in possession of the land before he discovered the fraud, the abstract was in the custody of the holder of a deed of trust and was not inspected by plaintiff.

The condition of the tract was such that nothing short of a survey would have informed plaintff of its actual, or even approximate, area and in the state of facts presented by the evidence of plaintiff, the defendant brokers were guilty of an actionable fraud in falsely representing the acreage to be so materially in excess of its real quantity. Whether willfully made, with knowledge of the true fact, or recklessly, with pretended knowledge, such representations were a fraud upon and an injury to plaintiff who, obviously, was compelled to rely upon them. Under the doctrine of the decision of the Supreme Court in Judd v. Walker, 215 Mo. 312, there can be no question of the liability of the defendant brokers to respond in damages to plaintiff, unless it should be held that his own neglect to observe ordinary care and prudence for his own protection was the proximate cause of his loss. Of the subject of the legal effect of negligence of a vendee in such case the court says in Judd v. Walker, supra, l. c. 337: "The word 'negligence' used in that connection, as we understand its meaning in the law of negligence, is an unhappy expression. Fraud is a wilful, malevolent act directed to perpetrating a wrong to the rights of another. That such an act in a vendor should not be actionable because of the mere negligence or inadvertence of the vendee in preventing the fraud, ought to be neither good ethics nor good law."

The very end and aim of fraud is to deceive its victim, to lull him into a false sense of security, to induce him to neglect some precaution which, if taken, would protect him against the contemplated injury and to hold that mere negligence on his part thus induced should give sanctuary to the wrongdoer would be to put a premium on rascality and to say that justice is powerless to give relief when the fraudulent purpose is achieved. The modern saying "nothing succeeds like success" if not entirely immoral, has no place in jurisprudence, especially not in fraud cases where the success of the fraudulent practices is the very fact that gives a cause of action.

Of course for fraudulent representations to be regarded as the proximate cause of the loss, the party to whom they were addressed must have acted with the care to be expected of an ordinarily careful and prudent person in his situation, and he will not be heard to say that he relied on representations concerning matters about which he was under no necessity to depend upon the vendor's representations for his information. But where the representations relate to facts peculiarly within the knowledge of the vendor and he knows that the vendee is without reasonable opportunity to consult independent sources of information, the vendor cannot be allowed to escape liability on the specious pretext that the vendee might have discovered their falsity if he had not been so trustful and had taken the pains to consult more reliable sources of information. Neglect on the part of the vendee, to deprive him of the right of redress, must not only amount to the violation of a positive legal duty (Green v. Ins. Co., 159 Mo. App. l. c. 289), but must be the proximate cause of the loss.

We fail to perceive any good ground for the argument that plaintiff did not observe ordinary care and prudence in the transactions in question. He did as

men who buy land and are unskilled in the examination of titles usually do—employed a competent examiner of titles to examine and report upon the abstract. He had no reason to think he had been deceived and therefore was no more remiss in omitting to request the examiner to report on the area of the land than in failing to have a survey made. The argument that the knowledge of the examiner which he derived from the recitals of the abstract must be imputed to plaintiff, his principal, would be well taken if the information related to a matter within the scope of his employment. In such cases notice to the agent is notice to the principal. [Hickman v. Green, 123 Mo. l. c. 182; Meier v. Blume, 80 Mo. 184; Choteau v. Allen, 70 Mo. 290; Smith v. Boyd, 162 Mo. l. c. 157; Hedrick v. Beeler, 110 Mo. l. c. 100.] But here the knowledge the examiner derived from the abstract related to a subject foreign to his employment, which, as stated, was to examine the title to certain described lands and not to ascertain their quantity. The examiner was not at fault in not referring to the acreage of the tract in his reports on the title, and plaintiff should not be held bound by the information his agent received about a matter which did not pertain to the service the agent was employed to perform and which was not communicated to plaintiff.

The court did not err in refusing the peremptory instruction asked by defendants.

As we have stated an inference properly may be drawn from all the evidence that the defendant brokers were not acting for themselves in the transaction but as the agents of the owners of the record title in which case their principals would be jointly and severally liable with them for the injurious consequences of their false and fraudulent representations. But on the theory that the brokers were the owners of an option to purchase the land and were representing

only themselves, the judgment cannot be pronounced erroneous on the ground that (following the verdict) it was rendered against the record owners as well as the brokers. These owners did not ask a separate instruction in the nature of a demurrer to the evidence, but made common cause with their codefendants and joined them in procuring instructions which in legal substance conceded their joint liability with their codefendants. We refer especially to defendant's first instruction. The point made for the first time after verdict that the defendants should be divided into two groups, i. e., the owners and the brokers, and that the evidence does not disclose a cause of action against one of such groups, comes too late.

We do not agree with defendants that we should declare as a matter of law that the verdict was the result of passion and prejudice for the reason that it was for a less amount than the conceded value of the fictitious acreage. To return a verdict for plaintiff the jury necessarily found that plaintiff was induced by the fraudulent representations to purchase, as he believed, 480 acres of land for $14,000 which was at the rate of $29.16 2/3 per acre. His proof, consisting of the results of the survey his vendee caused to be taken, shows a shortage of 53.31 acres for which he paid defendants $1,554.87. The answer of defendants, instead of raising an issue over the real quantity of the land, alleges that it was less than plaintiff asserted. The measure of damages was not a subject of dispute, either in the pleadings or evidence, and if plaintiff was entitled to recover, the measure was the sum he had paid defendants for land which did not exist. The verdict for $1,200 was inadequate by the sum of $354.87, but under all the circumstances before us, we think this discrepancy should not be regarded as compelling the reversal of the judgment at the instance of defendants who are in the position of com-

plaining that the verdict against them was too small. Defendants asked no instruction on the measure of damages and the instructions given at the request of plaintiff contained no more definite direction relating to that subject than "to find for the plaintiff in such sum as you may believe from the evidence he has been damaged."

In actions *ex contractu* the plaintiff may complain of the inadequacy of a verdict returned for him where it "is obviously the result of a mistaken view of the rule of law applicable to the facts in the evidence." [Todd v. Boone Co., 8 Mo. 431; Fulkerson v. Bollinger, 9 Mo. 838; Wheringer v. Ahlmeyer, 23 Mo. App. l. c. 281; Morris v. Railroad, 136 Mo. App. 393.] And in actions *ex delicto* where the damages may be measured by a definite rule and ascertained with certainty, the same rule prevails (Morris v. Railroad, supra) and where the only reasonable conclusion the verdict will warrant is that the jury turned from the evidence and the law as declared by the court and were actuated by passion or prejudice, or by mistake or misapprehension, the defendant against whom the inadequate verdict was rendered is as much entitled to complain as the plaintiff, since both parties have the right to demand that their case be tried according to the law and the evidence. But the authorities reviewed in Morris v. Railroad, supra, do not regard inadequacy, whether it be relatively great or small, as an indubitable indication that the verdict was not responsive to the law and the evidence, but was the product of mistake or misconduct on the part of the jury. The presumption of right acting is so strong that it may be overcome only by such a glaring deficiency in the verdict as to leave room for no other reasonable inference than that the jury was remiss in the performance of its duty. The defeated defendant can have no cause to complain if the jury, in an honest effort to apply the law, as

disclosed in the instructions, returned an inadequate assessment of damages against him.

The jury in the present instance did not disobey the instructions on the measure of damages which by non-direction omitted to give them a more definite rule than "to find for the plaintiff in such sum as you may believe from the evidence he has been damaged." Defendants would have been entitled to a more definite instruction and in failing to ask it were manifestly not averse to going to the jury under a rule which appeared to give the jury some latitude in measuring the damages. The size of the verdict lends no countenance to the thought that the jury were actuated by any improper motive, or did not honestly endeavor to apply the law given to them to the facts and circumstances in evidence.

There is no prejudicial error in the record and the judgment is affirmed. All concur.