Frederick J. PEET, Appellant,

v.

Cecelia RANDOLPH and George Randolph, Respondents/Cross Appellants.

No. ED 84251.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 1, 2005.

John G. Young, Jr., Clayton, MO, for appellant.

Frank K. Carlson, Union, MO, for respondents.

PATRICIA L. COHEN, Presiding Judge.

Frederick J. Peet appeals from an amended judgment of the Circuit Court of Franklin County, denying specific performance of a real estate contract he and Judith Keen entered into with Cecelia and George Randolph for the purchase of the Randolphs' farm in Franklin County. Peet argues that the trial court erred when it denied his petition for specific performance on the grounds that the contract lacked an adequate property descrip-

tion. Mrs. Randolph cross-appeals from the portion of the judgment taxing costs against her. We affirm in part and reverse in part.[1]

### Background

Peet and Keen (collectively "Purchasers") filed a petition for specific performance of a real estate contract involving the sale of a 140–acre farm owned by Mr. and Mrs. Randolph. Initially, the trial court granted summary judgment in favor of the Randolphs, finding, in relevant part, that the contract was indefinite and incapable of specific performance. Purchasers appealed. We reversed, holding, *inter alia,* that there were genuine issues of material fact that precluded summary judgment and remanded for a trial on the merits. *See Peet v. Randolph,* 33 S.W.3d 614 (Mo. App. E.D.2000) (*Peet* I).

Following remand, the trial court dismissed Purchasers' cause with prejudice for failure to prosecute. Peet appealed. We reversed the dismissal and remanded for a trial on the merits. *See Peet v. Randolph,* 103 S.W.3d 872 (Mo.App. E.D. 2003) (*Peet* II). Following the second remand, the parties tried the matter over the course of a number of days.

In May 1996, Purchasers entered into a Residential Sale Contract ("RSC") with Mr. and Mrs. Randolph for the purchase of "120 ± acres" of the Randolphs' 140 acres. The Randolphs intended to retain approximately 20 acres of the property. However, the 20 acres to be retained were not specifically described in the contract. Rather, the RSC described the sale property in pertinent part as, "120 ± acres and All Improvements as per MLS Listing # 532264, 3547 Hwy EE, Beaufort, Mo. Legal to govern." A Supplemental Agree-

ment, incorporated by reference into the RSC, provided that the Randolphs would obtain a survey at their expense:

> Survey: Buyer acknowledges orig. tract is 140 ± A. Seller, with P & Z approval, is retaining no more than 20 A. Seller agrees to have corners of 20 A. tract marked at his expense. Excepting the prior mentioned 20 A tract, Buyer accepts the property lines as *per existing plat.*

(Emphasis added).

Despite the Supplemental Agreement's reference to an "existing plat," the trial court determined that Purchasers did not attach the document to the Supplemental Agreement. Peet contended at trial that "existing plat" referred to a "Highlighted Map" that Purchasers' real estate agent, Randall Carter, created by modifying an aerial photograph of the property that the Randolphs' real estate agent, Paul Pier, Jr., had included in a sales brochure. The photograph, which contained a superimposed plat, reflected Pier's hand-drawn lines intended to approximate the 20–acre "wedge" the Randolphs wished to retain. The Randolphs, however, never approved of or consented to Pier's location of the 20–acre "wedge."

Although the Randolphs signed the RSC and Supplemental Agreement in May 1996, Mrs. Randolph testified at trial that she and her late husband did not carefully read the Supplemental Agreement before signing it, taking "for granted that [Pier] would treat us right." Sometime later, the Randolphs realized that their understanding of the deal differed from Purchasers' understanding in certain key respects, including, among others, the location of their 20–acre tract. The parties disputed

---

1. Judith S. Keen was a plaintiff in the original action, but before trial assigned her interest in the property to Peet. Keen is not a party to this appeal. George Randolph died before trial.

whether Pier showed the Highlighted Map to the Randolphs. However, the trial court determined that the Randolphs were not shown the Highlighted Map and did not intend for it to be a part of the Supplemental Agreement and RSC.

In August 1996, Purchasers were willing and able to close. The Randolphs, however, refused to close and did not appear at the scheduled closing. Purchasers filed the underlying action for specific performance on September 23, 1996.

In 1999, Purchasers retained a registered land surveyor to prepare a legal description of the real estate they believed was covered by the RSC. Relying on, among other things, the RSC, Supplemental Agreement, and Highlighted Map, the surveyor was unable to determine the exact boundaries of the particular 20–acre tract the agreement provided the Randolphs were to retain. Rather, he presented undisputed evidence that the "wedge" in the Highlighted Map contained more than twenty-two acres. The trial court concluded based on the surveyor's testimony that several possible 20–acre tracts could be drawn within the wedge.

Following trial, the trial court entered a detailed judgment denying specific performance on the grounds that it could not "find a specific legal description for the real estate that must be sold in this case" and was not "in a position to choose boundaries from among the possible alternatives...." After finding against Purchasers and in favor of the Randolphs, the trial court taxed costs against the Randolphs.

This appeal and cross-appeal followed.

### Standard of Review

In suits of an equitable nature, we sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the

evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences. *Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc.,* 109 S.W.3d 200, 203 (Mo.App. E.D.2003). We defer to the trial court's factual findings, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. *Id.* at 203. Additionally, the trial court is afforded considerable discretion in deciding whether to award the equitable remedy of specific performance. *McBee v. Gustaaf Vandecnocke Revocable Trust,* 986 S.W.2d 170, 173 (Mo. banc 1999). We review the trial court's award of costs for an abuse of discretion. *Chapman v. Schearf,* 360 Mo. 551, 559, 229 S.W.2d 552, 555 (Mo. banc 1950) (courts in equity have inherent and discretionary power to award costs).

### Discussion

#### A. Specific Performance

In his sole point on appeal, Peet argues that the trial court erred in denying specific performance because the Supplemental Agreement, when read together with the referenced "existing plat," provides the necessary "key" for the identification and description of the subject property. Peet contends, in the alternative, that any perceived uncertainty in the contract was caused by the Randolphs' failure to obtain a survey, as required by the RSC, and can be cured by ordering Mrs. Randolph to obtain the survey. Mrs. Randolph counters that the contract is incapable of specific performance because of its uncertain terms and not because she and her late husband failed to obtain a survey.

We agree that the trial court properly denied specific performance.

 A party may not compel specific performance of a real estate contract unless the contract: (1) is definite, certain and complete; (2) contains the essential terms; and (3) may be enforced as written. *Peet* I, 33 S.W.3d at 617. One of the essential terms of a real estate contract is a description of the real property. *Id.* While "[t]he land does not need to be fully and actually described in the paper; ... the writing must afford the means whereby the identification may be made perfect and certain through parol evidence." *Id.* (citing *Herzog v. Ross,* 355 Mo. 406, 196 S.W.2d 268, 270 (Mo.1946)). Importantly, a "writing is sufficient if it clearly reveals the intent of the parties with reference to the *particular tract* which is the subject matter of the sale and furnishes the means of its identification; or, as some cases hold, if it provides the 'key' to the identification—the applicable principle being that that is certain which can be made certain." *Ray v. Wooster,* 270 S.W.2d 743, 749 (Mo. 1954) (emphasis added).

Our analysis of Peet's appeal turns chiefly on the requirement that the *writing* "must afford the means whereby the identification may be made perfect and certain through parol evidence." *Peet* I, 33 S.W.3d at 617. Here, the writing fails to meet this requirement. The RSC describes the property as:

> 120 ± acres and All Improvements as per MLS Listing # 532264, 3547 Hwy EE, Beaufort, Mo. Legal to govern.

The Supplemental Agreement includes the following survey provision:

> Survey: Buyer acknowledges orig. tract is 140 ± A. Seller, with P & Z approval, is retaining no more than 20 A. Seller agrees to have corners of 20 A. tract marked at his expense. Excepting the prior mentioned 20 A tract, Buyer ac-

cepts the property lines as *per existing plat.*

(Emphasis added). Neither the RSC nor the Supplemental Agreement contains a legal description of the subject property. In fact, these documents alone provide little more than that Purchasers agree to buy approximately 120 acres of the Randolphs' approximately 140–acre farm. An acre is "[a] quantity of land containing 160 square rods, 4,840 square yards, or 43,560 square feet of land, in whatever shape." BLACK'S LAW DICTIONARY 17 (abridged 6th ed.1998). Thus, the term acre can be applied to land in any number of forms and merely referring to acreage in the property designation is not a meaningful description. Peet, however, asserts that the Supplemental Agreement, when read together with the "existing plat," provides the necessary "key" for a valid description. We disagree.

 The "key" contained in the writing must be a reference "to external standards in existence . at the time and capable of being determined beyond dispute." *Ray v. Wooster,* 270 S.W.2d at 749 (internal citation omitted). Here, even accepting Peet's contention that the "existing plat" refers to the Highlighted Map that his real estate agent created, Peet's claim cannot prevail. The "key" fails to identify the particular "120 ± acres" to be sold. As established at trial, Peet's surveyor, even with reference to the Supplemental Agreement and Highlighted Map, was unable to determine what *particular* property was to be conveyed and what was to be retained because the "wedge," as identified in the Highlighted Map, contained "a lot more" than 20 acres. *See Williamson v. Burnett,* 345 S.W.2d 80, 83 (Mo.1961) (description sufficient where surveyor would have no difficulty identifying property in question). As the trial court determined, the Ran-

dolphs' 20–acre parcel could be drawn in a number of ways within the wedge.[2]

Peet's reliance on the Supplemental Agreement's provision for a future survey does not rectify the defects in the RSC and the Supplemental Agreement. Peet argues that a proper reading of the survey provision clarifies that the parties intended the Randolphs to "select the no more than 20 acres within the Wedge and to have the 20 acres surveyed ...," after execution of the contract. According to Peet, to that end, the trial court should have ordered Mrs. Randolph to choose one of the possible 20–acre tracts within the wedge and close on the sale.

While a survey may be used to confirm a valid, although imperfect description, Peet points to no Missouri case allowing a survey to be conducted after the contract is executed for the purpose of first identifying and then describing the property to be conveyed by the previously executed contract. *See Biggs v. Moll,* 463 S.W.2d 881 (Mo.1971) (survey used to confirm description). Moreover, Peet's position is violative of the basic principle that the *writing* must clearly reveal "the intent of the parties with reference to *the particular tract* which is the subject matter of the sale." *Ray v. Wooster,* 270 S.W.2d at 749 (emphasis added). Here, the writing does not clearly reveal the intent of the parties regarding the particular property to be conveyed because, as acknowledged by Peet, the parties themselves had not agreed to the particular tract to be purchased as of the time they executed the contract.

In addition, Peet's contention is based on his unilateral post-contract interpretation of the survey provision. The pertinent part of the survey provision provides that:

> Seller ... is retaining no more than 20 A. Seller agrees to have corners of 20 A. tract marked at his expense. Excepting the prior mentioned 20 A tract, Buyer accepts the property lines as per existing plat.

According to Peet, "[t]hat language and the Highlighted Map established the outside perimeter of where Defendants could locate the retained property within the Wedge under the Buyers' offer." However, the survey provision does not mention the "wedge," or suggest the possibility of more than one 20A tract. Although Peet points to evidence in the record to support a finding that the parties agreed to the parameters of the wedge, and therefore to the portion the Randolphs were to retain, the trial court was unpersuaded. Peet's counsel attempted to address the problem when he stated at a post-trial hearing that Peet "will agree that the 20–acre parcel can be located anywhere within the wedge." This does not cure the problem and, in fact, highlights the deficiency of the contract.

Under the facts and circumstances of this case, we find that the trial court did not err in denying specific performance. Point denied.

**B. *Costs***

In her cross-appeal, Mrs. Randolph contends that the trial court improp-

---

**2.** We note that, in his brief, Peet suggests that the trial court's denial of specific performance somehow violates our decision in *Peet* I, remanding the case back to the trial court for a trial on the merits. He is mistaken. In *Peet* I, we remanded the case because we found there was a question of material fact as to whether the highlighted photograph "was part of the contract and whether the lines on it provide a sufficient description of the real estate for specific performance." While the trial court found it could properly consider the photograph, the court found as a matter of *fact* that the photograph did not provide a sufficient description.

erly assessed costs against her because she was the prevailing party for the purposes of Section 514.060, R.S.Mo. Peet responds that the trial court acted within its discretion because the majority of costs were incurred during the prior two appeals in which Peet was successful.

■ We agree that the trial court erred in assessing all costs against Mrs. Randolph. While courts in equity cases "have an inherent, discretionary power to award costs," *Gieselmann v. Stegeman,* 470 S.W.2d 522, 525 (Mo.1971), "[a]pportionment of costs in equity, as well as in other cases where the trial court has discretion, must bear some relationship to the judgments upon all of the issues and the principal issue litigated." *Kopp v. Franks,* 792 S.W.2d 413, 422 (Mo.App. S.D.1990). Here, the principal issue litigated was whether Mrs. Randolph should be ordered to specifically perform a real estate contract. While Mrs. Randolph prevailed on this issue, the trial court found "both Plaintiffs and Defendants are responsible for their failure to communicate and close the RSC." We, thus, find that the trial court abused its discretion in assessing *all* costs against Mrs. Randolph. Therefore, we remand this issue to the trial court for a hearing as to costs consistent with this opinion.

### Conclusion

The trial court's judgment is affirmed in part and reversed in part.

KATHIANNE KNAUP CRANE and ROBERT G. DOWD, JR., JJ., concur.