Guy Benny BROWN, Appellant,

v.

Kent MICKELSON, Cherry Mickelson, Robert Schoenberg, and April Schoenberg, Respondents.

No. WD 66511.

Missouri Court of Appeals, Western District.

March 27, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2007.

William N. Marshall, III, Kansas City, MO, for appellant.

Charles E. Weedman, Jr., Harrisonville, MO, for respondents.

Before THOMAS H. NEWTON, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Guy Benny Brown appeals from a judgment entered in the Circuit Court of Cass County, denying his petition alleging breach of contract and fraudulent concealment on the part of Kent and Cherry Mickelson and asking the court to quiet title to the property at issue.

Appellant held fee simple title to a piece of property located at 27602 South State Route 2 in Freeman, Missouri. The property was comprised of three separate tracts of land. Appellant purchased the first tract in 1972 and built a house and barn on that property in 1976. He purchased an adjacent two-acre tract of land to the north in the 1980s, and another adjacent 10–acre piece of land to the west in the 1990s.

After the property was scheduled for foreclosure by the holder of the first deed of trust, Appellant approached Kent Mickelson, a real estate broker, and proposed a deal that would allow him to avoid foreclosure and retain a portion of the property. Appellant sought to sell Mickelson and his wife, Cherry, the tract of land containing the home and barn and to retain the remaining land for himself. On July 4, 2003, Appellant and the Mickelsons entered into a contract to convey the property for $251,000. The contract described the property at issue as follows:

> Commonly known as 27602 S. St. Rt. 2, consisting of 22 acres M/L [1] of which 12 acres M/L shall be excluded from this contract. The referred to 12 acres to be excluded is the 10 acre parcel that lies on the west side of the property and 2

---

1. The parties concede that the designation      "M/L" stands for "more or less."

acres M/L, on the north boundary adjoining the 10 acre parcel, giving access to Hwy # 2.

An addendum was executed providing that the Mickelsons would pay any outstanding property tax on the property and would also pay for a survey to distinguish the northern boundary of the property and to provide a waterline easement for Appellant.

After the lending bank, Citizens Bank of Amsterdam, voiced concerns over the exclusion of the twelve acres, Appellant and the Mickelsons entered into a second addendum on July 13, 2003, which provided, in its entirety:

1. The parcel of property known as 27602 s. st. rt. 2 in the original contract is to be changed to include the entire 22 acres M/L with no exclusions.

2. Buyer agrees to give back to seller 12 acres M/L in the form of a quit claim deed following closing of this contract.

A release agreement was entered into by Appellant, the Mickelsons, and Citizens Bank of Amsterdam on July 14, 2003. In that agreement, the bank released twelve acres more or less from the mortgage but retained an interest in the home, outbuildings, improvements, and ten acres more or less. That same day, Appellant executed a warranty deed conveying the property to the Mickelsons.

After obtaining the property, the Mickelsons sought to quickly sell the tract with the house on it. On July 28, 2003, the Mickelsons entered into a contract with Robert and April Schoenberg to purchase that property for $379,000. That contract described the property as:

Commonly known as 27602 S. St. Rt. 2, consisting of 22 acres M/L, of which 12 acres M/L shall be excluded from the contract. The referred to 12 acres to be excluded is the 10 acre parcel that lies on the west side of the property and 2

acres M/L on the north boundary adjoining the 10 acre parcel, giving access to Hwy # 2.

An addendum was executed that same day providing that a legal survey was required to determine the northern boundary and that the buyers understood that "they are buying an approximate amount of acreage equal to 10 acres more or less."

A survey completed on August 21, 2003, revealed that the overall property was comprised of 20.11 acres, more or less, rather than the twenty-two acres originally thought. The tract that contained the house actually had approximately eight acres rather than ten acres. On August 28, 2003, the Mickelsons conveyed to the Schoenbergs the house, improvements, barn, and ten acres of property by general warranty deed. In so doing, they included approximately 1.89 acres from the west tract. On January 13, 2004, the Mickelsons conveyed the remaining 10.11 acres, more or less, to Appellant by quitclaim deed.

Subsequently, Appellant filed suit against the Mickelsons for breach of contract and fraudulent concealment for failing to convey to him the entire twelve acres set forth in the contract. Appellant further asserted a claim against the Schoenbergs to quiet title to the 1.89 acres in Appellant's favor.

The case was tried to the court. On December 30, 2005, the trial court entered its judgment in favor of the defendants on all counts. Appellant brings eleven points on appeal.

Our review of the trial court's judgment is governed by the standard of review established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and, therefore, "[w]e will affirm the judgment unless it is against the weight of the evidence, is not supported by substantial evidence, or it

erroneously declares or applies the law." *SD Invs., Inc. v. Michael–Paul, L.L.C.,* 90 S.W.3d 75, 81 (Mo.App. W.D.2002). "We view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." *Peet v. Randolph,* 157 S.W.3d 360, 363 (Mo.App. E.D.2005). "We defer to the trial court's factual findings, giving due regard to the trial court's opportunity to judge the credibility of the witnesses." *Id.*

In his first five points, Appellant contends that the trial court erred in finding that the contract provided for the Mickelsons to retain ten acres with Appellant receiving the remainder. Appellant argues that the contract sufficiently described the property that was to be conveyed back to him and that the reference to the overall property containing 22 acres, more or less, was merely descriptive, did not amount to a covenant, and was not of the essence of the contract.

The fundamental problem with Appellant's claims is that they are based upon the erroneous premise that the trial court's judgment rested upon interpretation of the contract. The trial court did not interpret the contract as providing for the Mickelsons to receive ten acres with the remainder being returned to Appellant. The trial court concluded that Appellant and the Mickelsons were mutually mistaken as to the overall acreage involved and that that mistake warranted reformation of the terms of the contract to ensure that the Mickelsons received the full ten acres the parties thought they would be receiving.

■ Certainly Appellant is correct that "[i]n the construction of contracts for the sale of real estate, as in the construction of deeds, [t]he mention of quantity of acres,[2] after a certain description of the subject by metes and bounds, or by other known specification, is but a matter of description, and does not amount to any covenant, or afford ground for the breach of any of the usual covenants, though the quantity of acres should fall short of the given amount." *Cantrell v. McDonald,* 412 S.W.2d 403, 408 (Mo.1967) (internal quotation omitted); *see also Arnett v. Venters,* 673 S.W.2d 67, 73 (Mo.App. W.D. 1984); *Fickbohm v. Schoonover,* 453 S.W.2d 1, 5 (Mo.App. S.D.1970). Appellant is equally correct that " '[t]he parol evidence rule bars evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous, final, and complete writing, absent fraud, mistake, accident or duress.' " *Sherman v. Deihl,* 193 S.W.3d 863, 866 (Mo.App. S.D.2006) (quoting *Building Erection Servs. Co. v. Plastic Sales Mfg. Co.,* 163 S.W.3d 472, 479 (Mo.App. W.D. 2005)).

■ In this case, however, the Mickelsons claimed that a mutual mistake existed as to the acreage of the property involved and that fact was material to the contract. They asserted that Appellant had affirmatively represented to them that the property with the house contained ten acres and that the parties intended for them to receive ten acres of property along with the house. The trial court's judgment was based upon a finding that the parties were, indeed, mutually mistaken as to the acreage of the property and that they intended for the Mickelsons to receive ten acres. On that basis, the trial

---

2. "An acre is '[a] quantity of land containing 160 square rods, 4,840 square yards, or 43,-560 square feet of land, in whatever shape.' " *Peet v. Randolph,* 157 S.W.3d 360, 364 (Mo. App. E.D.2005) (quoting *Black's Law Dictionary* 17 (abridged 6th ed.1998)). "Thus, the term acre can be applied to land in any number of forms and merely referring to acreage in the property designation is not a meaningful description." *Id.*

court concluded that the contract should be reformed.[3]

"Parol evidence is admissible to show that because of mutual mistake the writing did not reflect the intentions of the parties." *Unlimited Equip. Lines, Inc. v. Graphic Arts Centre, Inc.*, 889 S.W.2d 926, 933 (Mo.App. E.D.1994); *see also Morris v. Brown*, 941 S.W.2d 835, 840 (Mo.App. W.D.1997). When a party seeks to reform a contract based upon mutual mistake, "parol or extrinsic evidence is admissible to establish the mistake and to show how the writing should be reformed to conform to the parties' intention." *Everhart v. Westmoreland*, 898 S.W.2d 634, 638 (Mo. App. W.D.1995). "[A] mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption of vital fact upon which they based their bargain." *Alea London Ltd. v. Bono–Soltysiak Enters.*, 186 S.W.3d 403, 415 (Mo.App. E.D.2006) (internal quotation omitted). "[W]hether parties are laboring under a mutual mistake is normally a question of fact." *Id.* (internal quotation omitted).

The parol evidence in the record overwhelmingly supports a finding that the parties were indeed mistaken as to the overall acreage contained in the property. The contract expressly states that the property contains twenty-two acres, more or less, but the parol evidence clearly reflects that the property actually contained 20.11 acres more or less—more specifically, that the lot containing the house contained approximately eight acres rather than ten acres. Appellant does not challenge that fact.

For the foregoing reasons, Appellant's arguments that the trial court erred in considering parol evidence and that the trial court improperly interpreted the language of the contract must fail. Clearly the trial court could properly entertain parol evidence where the Respondents claimed a mutual mistake justified reformation of the contract. Furthermore, the trial court's decision was not based upon interpretation of the contract language; thus, it cannot have misapplied the rules of contract construction as asserted by Appellant.

Appellant is correct, however, that the trial court erred in concluding that the contract should be reformed to include 1.89 acres from the western tract, as the evidence clearly reflects that too was not the intent of the parties. Appellant accurately points out that it was impossible for the contract to be reformed to conform to the parties' true intent.

"[R]eformation is a remedy by which a party to a contract . . . may obtain modification of the terms of the contract *such that those terms reflect the parties' original intent in forming the contract.*" *Lunceford v. Houghtlin*, 170 S.W.3d 453, 464 (Mo.App. W.D.2005) (emphasis added). "Reformation allows parties to a contract to conform the writing to their intent." *Elton v. Davis*, 123 S.W.3d 205, 212 (Mo. App. W.D.2003). Reformation "is an extraordinary equitable remedy and should be granted with great caution." *Id.*

"The party seeking reformation must show that the writing fails to accurately set forth the terms of the actual

---

**3.** While Respondents never formally pled a counter-claim for reformation, "reformation of a contract is proper if the issue is tried by implied consent, even in the absence of a pleading requesting reformation." *Lunceford v. Houghtlin*, 170 S.W.3d 453, 464–65 (Mo.

App. W.D.2005). "[R]eformation is available in the absence of a preliminary decree of reformation and . . . a court has discretion to deem a contract reformed when the circumstances justify reformation of the contract." *Id.* at 465 n. 5.

agreement or fails to incorporate the true prior intentions of the parties." Id. "The burden of proof is upon the party seeking reformation to show by clear, cogent and convincing evidence: (1) *a preexisting agreement between the parties to describe the tract in accordance with the proposed reformation;* (2) the mistake; and (3) the mutuality of the mistake." *Engelland v. LeBeau,* 680 S.W.2d 435, 437 (Mo.App. E.D.1984) (emphasis added). " 'The mistake must be mutual and common to both parties and must reveal that both parties did what neither intended.' " *Elton,* 123 S.W.3d at 212 (quoting *Everhart,* 898 S.W.2d at 637). "In determining the propriety of granting reformation, the trial court has a duty to consider the wording of the contract as signed by the parties, the relationship of the parties, the subject matter of the contract, the usages of the business, the circumstances surrounding the execution of the contract, and its interpretation by the parties." *Everhart,* 898 S.W.2d at 638.

As noted *supra,* Appellant and the Mickelsons entered into a contract to convey the property for $251,000. The contract described the property at issue as follows:

> Commonly known as 27602 S. St. Rt. 2, consisting of 22 acres M/L of which 12 acres M/L shall be excluded from this contract. The referred to 12 acres to be excluded is the 10 acre parcel that lies on the west side of the property and 2 acres M/L, on the north boundary adjoining the 10 acre parcel, giving access to Hwy # 2.

An addendum was also executed providing that the Mickelsons would pay for a survey to distinguish the northern boundary of the property and to provide a waterline easement for Appellant. Appellant and the Mickelsons later entered into a second addendum, which provided, in its entirety:

1. The parcel of property known as 27602 s. st. rt. 2 in the original contract is to be changed to include the entire 22 acres M/L with no exclusions.

2. Buyer agrees to give back to seller 12 acres M/L in the form of a quit claim deed following closing of this contract.

While the second addendum is indefinite with regard to what 12 acres were to be returned to Appellant, the original contract and the testimony presented at trial clearly establish that, prior to learning that the tract containing the home only contained approximately eight acres, the intent of the parties was for Appellant to have the ten-acre tract and the two-acre tract returned to him with the Mickelsons retaining the original tract containing the home.[4] In light of the language contained in the original contract and second addendum to the contract, the trial court could not have properly found, by clear and convincing evidence, that the parties did not intend for twelve acres to be returned to Appellant. Read together, those documents reflect the intent of the parties that the Mickelsons convey to Appellant the ten-acre tract to the west and the two-acre tract to the north of the tract containing the home,[5] and the record reflects that the

---

4. Because the second addendum purports to replace the original description of the property and merely references twelve acres in general, it is proper to examine parol evidence to determine the property description of those twelve acres. "Parol evidence is permissible in interpreting an ambiguous contract ... when it does not contradict, alter, or vary the

contractual terms." *Sherman v. Deihl,* 193 S.W.3d 863, 866 (Mo.App. S.D.2006).

5. The contract makes no direct reference to the Mickelson's receiving ten acres in the tract containing the home, though that conclusion is reasonably deduced by subtracting the twelve acres Appellant was to receive

Mickelsons were aware of the boundaries of the tract they were to retain. Mr. Mickelson testified that, prior to the execution of the contract, Appellant told him, "What I would really like to do is sell you 10 acres and the house, and I want to keep 12." This was clearly the parties' intent when they entered into the contract—when they thought the parcel of land on which the house rested was ten acres, more or less.

In carving 1.89 acres out of the ten-acre tract that was expressly to be returned to Appellant and conveying that land to the Schoenbergs instead of Appellant, the Mickelsons clearly failed to satisfy their contractual obligation to return the entire ten-acre tract, in addition to the entire two-acre tract, to Appellant. On appeal, the Mickelsons do not offer any argument supporting reformation of the contract in this manner. Instead, they simply claim that the trial court's decision to allow them to reform the contract is justified simply by the fact that the amount of acreage involved was material to the contract because it was approximately 20% less than represented by Appellant.

In denying Appellant's petition, the trial court, for all practical purposes, ratified the Mickelsons' unilateral changes to the agreement, thereby granting reformation of the contract in a manner that was inconsistent with Appellant's express intent to retain twelve acres of the property. As noted *supra*, reformation "is an extraordi-

nary equitable remedy and should be granted with great caution." *Elton*, 123 S.W.3d at 212. "[R]eformation is a remedy by which a party to a contract . . . may obtain modification of the terms of the contract *such that those terms reflect the parties' original intent* in forming the contract." *Lunceford*, 170 S.W.3d at 464 (emphasis added); *see also Elton*, 123 S.W.3d at 212 ("Reformation allows parties to a contract to conform the writing to their intent.").

In this instance, it is impossible to reform the contract to conform with the original intent of the parties because the parties intended for Appellant to receive twelve acres and for the Mickelsons to receive ten acres, when there were only twenty total acres of property to be divided. They intended for the original tract containing the home to contain ten acres when it was only comprised of about eight acres. Thus, it is not possible to modify the contract language to do what the parties originally intended. The evidence simply does not support a finding by clear and convincing evidence, or otherwise, that Appellant intended to convey the 1.89 acres at issue to the Mickelsons.

The cases cited by the trial court in support of its decision to allow the Mickelsons' unilateral reformation of the contract involved claims for monetary damages for fraud and negligent misrepresentation where a representation as to

---

from the total acreage mentioned in the contract, which was thought to be twenty-two acres, more or less. The original contract, as read prior to the second addendum, clearly identifies the ten-acre tract on the western side of the property as being excluded from the property being transferred to the Mickelsons, and no "more or less" language is attached to the statement of the acreage contained in that tract. Thus, it is clear in the original contract that the Mickelsons were not to retain any of those ten acres, from which

they carved out the additional two acres that they transferred to the Schoenbergs. Likewise, the tract of land containing two acres, more or less, located to the north of the house, which would provide access to Highway # 2 for the ten-acre tract, is specifically excluded from the property to be transferred to the Mickelsons. The second addendum provides that the entire property was to be conveyed to the Mickelsons with the Mickelsons agreeing to convey 12 acres more or less back to Appellant.

acreage was found to be material. *See Marler*, 637 S.W.2d at 366–67 (affirming a verdict for negligent misrepresentation where the vendor affirmatively represented that the property contained 25% more acreage than it actually did); *Kelley v. Peeples*, 192 Mo.App. 435, 182 S.W. 809, 810–11 (Mo.App.1916) (affirming an award of damages for fraud where land brokers intentionally misrepresented that property had 480 acres when it really had only had about 407); *Leicher v. Keeney*, 98 Mo.App. 394, 72 S.W. 145, 146–48 (Mo.App. W.D. 1903) (reversing a judgment of nonsuit in an action for deceit where the defendant intentionally represented that the property contained 160 acres when it only contained approximately 142 acres, holding that shortfall to be material). Indeed, where a sale of land is "made in gross, rather than per acre, and disparity between the represented and actual quantity of land is palpable and unreasonable, and the purchase money has been paid, the vendee may, if he chooses, seek equitable relief by way of an adjustment of the purchase price." *Cundiff v. Cline*, 752 S.W.2d 409, 413 (Mo. App. S.D.1988). In the alternative, the party to whom the misrepresentation was made may elect to disaffirm the contract and sue in equity for rescission. *Cabinet Distribs., Inc. v. Redmond*, 965 S.W.2d 309, 314 (Mo.App. E.D.1998).

These remedies might have appropriately been pursued by the Mickelsons and granted by the trial court. Instead, they elected to withhold a portion of the property that was to be returned to Appellant under the terms of the contract and conveyed it to the Schoenbergs. In so doing, the Mickelsons were in breach of the contract, and the trial court erred in concluding otherwise. The Mickelsons were not entitled to select 1.89 additional acres they wanted from the property that was to be conveyed back to Appellant under the express terms of the agreement. While the trial court could properly have granted the Mickelsons relief in the form of an adjustment to their purchase price or possibly allowed for the contract to be rescinded, the relief granted by the trial court was not consistent with the original intent of the parties and, therefore, did not constitute an appropriate reformation of the contract. For that reason, the judgment of the trial court must be reversed.

Appellant also raises two points challenging the trial court's denial of his claim for fraudulent concealment. Appellant argues that the trial court improperly applied the elements for fraudulent representation rather than fraudulent concealment. Appellant further contends that the weight of the evidence established that the Mickelson's fraudulently concealed the shortfall in the acreage of the property.

■ Appellant's theory of fraudulent concealment was based upon an allegation that the Mickelsons, as a result of a survey performed after the property was conveyed to them by Appellant, became aware of the shortfall in the acreage of the property prior to the transfer of the property to the Schoenbergs and that they failed to inform him of that fact. The trial court found that Appellant failed to establish reliance, materiality, or damage in support of that claim.

■ Appellant conclusively argues, without any supporting citation or logic, that the information possessed by the Mickelsons was material and that, therefore, "reliance and damage were of little consequence." While it is true that, where a party has an affirmative obligation to disclose information, "that party's failure to disclose the information serves as a substitute for the false representation element required in fraud," the plaintiff "still ha[s] the burden of proving every other element of fraud." *Thoroughbred Ford,*

*Inc. v. Ford Motor Co.,* 908 S.W.2d 719, 732 (Mo.App. E.D.1995). Thus, Appellant's failure to establish reliance or damages resulting from the alleged fraudulent concealment is indeed fatal to his claim. *Id.* at 733.

Moreover, the record makes it abundantly clear that Appellant could not have relied upon or been damaged by the Mickelsons' failure to inform him of the survey results. At the time Appellant claims the Mickelsons obtained knowledge of the acreage shortfall, the parties had already executed the contract, and Appellant had conveyed the property to the Mickelsons. Thus, any concealment of the information could have played no role in the formation of the contract between Appellant and the Mickelsons. The undisputed facts establish that, at the time the contract was executed, the parties were mutually mistaken as to the amount of acreage involved and there could have been no intent on the part of the Mickelsons to deceive Appellant. Appellant's points related to his fraudulent concealment claim are denied.

Finally, in light of our holding that the contract could not properly be reformed to include the 1.89 acres, we must examine Appellant's claims that the trial court erred in refusing to quiet title to the 1.89 acres in favor of Appellant. Appellant argues that the trial court erroneously determined that the Schoenbergs were bona fide purchasers of the property because they had actual or constructive notice of Appellant's claim to the land. He further maintains that it would be unjust for them to retain possession of the property.

■■ "A bona fide purchaser takes free of adverse claims to prior, unrecorded interests in the property." *In re Idella M. Fee Revocable Trust,* 142 S.W.3d 837, 842 (Mo.App. S.D.2004). Thus, if they are bona fide purchasers, the Schoenbergs would take the property, and Appellant would simply be left to pursue other remedies from the Mickelsons.

■■ " 'A bona fide purchaser is one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith.' " *Id.* (quoting *Johnson v. Stull,* 303 S.W.2d 110, 118 (Mo. 1957)). The party claiming to be a bona fide purchaser bears the burden of proving those elements by a preponderance of the evidence. *21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 884 (Mo.App. E.D.1995).

■■ Clearly the Schoenbergs paid valuable consideration to the Mickelson's in exchange for the property, and Appellant does not challenge that fact. The issue to be decided is whether the record supports a determination that the Schoenbergs lacked notice of Appellant's rights in the property and acted in good faith.

At trial, the Schoenbergs testified that they inquired about the property after seeing a real estate advertisement listing the house, a barn, and ten acres of land. They stated that Mr. Mickelson represented to them on several occasions that they were to receive ten acres of property. Both Mr. and Mrs. Schoenberg testified that they were unaware what the boundaries of their property were supposed to be and that they had no knowledge of any boundary dispute between Appellant and the Mickelsons. Mr. Schoenberg acknowledged, however, that he was aware that the contract they were signing indicated that twelve acres of the overall property were being returned to Appellant. In that vein, the contract between the Mickelsons and the Schoenbergs offered the following description of the property:

Commonly known as 27602 s. St. Rt. 2, consisting of 22 acres M/L of which 12 acres M/L shall be excluded from this contract. The referred to 12 acres to be

excluded is the 10 acre parcel that lies on the west side of the property and 2 acres M/L on the north boundary adjoining the 10 acre parcel, giving access to Hwy # 2.[6]

Thus, it is clear from the terms of the contract between the Mickelsons and the Schoenbergs that the Schoenbergs were not to receive any of the ten-acre parcel lying on the west side of the property. No more or less provision is attached to that measurement. Moreover, Mr. Schoenberg's admission that he knew that Appellant was to receive twelve acres of the overall property establishes his knowledge of Appellant's claim to the property.

Accordingly, the trial court's finding that the Schoenbergs did not have any notice of Appellant's interest in the property is against the weight of the evidence. The trial court, therefore, erred in refusing to quiet title to the 1.89 acres in favor of Appellant.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.

---

6. An addendum to the contract further provided:

This addendum becomes a legal part of the original contract with the following included:

1. This contract is contingent upon buyer obtaining necessary financing.

2. Buyer understands that a legal survey shall be required to determine the northern boundary and that they are buying an approximate amount of acreage equal to 10 acres more or less. Buyer is aware of the point where the survey will originate and end and those points will be the legal boundary as determined by the survey.

3. Seller retains the right to market said property and in the event of sellers finding another buyer ready, willing and able, the original buyer shall be given 48 hours to either fulfill the contract terms without any contingency or cancel said contract entirely.